# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LORENZO THIGPEN, | ) | CASE NO. 1:17-CV-2196 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| EDWARD SHELDON, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Lorenzo Thigpen, (hereinafter "Petitioner" or "Thigpen"), challenges the constitutionality of his convictions in the case of *State v. Thigpen*, Cuyahoga County Court of Common Pleas Case No. CR-12-563007. Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1). Respondent, Warden Edward Sheldon, ("Respondent") filed an Answer/Return of Writ, (R. 10), and Petitioner filed a Traverse (R. 20), to which Respondent did not file a reply. This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.

For reasons set forth in detail below, it is recommended that the habeas petition be DISMISSED as procedurally defaulted.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") The

Eighth District Court of Appeals (hereinafter "state appellate court") summarized the facts

underlying Petitioner's conviction as follows:

> {¶ 1} After following a speeding vehicle to a neighborhood area used as an illegal
> dumping ground, police officers saw defendant-appellant Lorenzo Thigpen
> dragging something from a vehicle. As the officers approached Thigpen, he tried
> to hide behind a pile of debris and then fled on foot. The police found a badly
> beaten body inside the vehicle. After apprehending Thigpen, the police learned
> that the vehicle he had been driving belonged to the victim; that he may have been
> involved in the theft of tools from the victim; that he was seen hours before his
> arrest driving at the address where the victim lived; that the victim's apartment
> had been burglarized earlier that day; that a glove found in the victim's apartment
> was stained with the victim's blood and had Thigpen's DNA inside the glove; that
> hours before being apprehended, Thigpen tried to obtain a shovel for digging; and
> that Thigpen's own vehicle bore traces of the victim's blood. On this evidence, a
> jury found Thigpen guilty of aggravated murder, murder, burglary, grand theft of
> a motor vehicle, tampering with evidence, abuse of a corpse, failure to comply
> with an order or signal of a police officer, and receiving stolen property. After
> merging certain counts for sentencing, the court sentenced Thigpen to a term of
> life in prison without parole.
>
>                                            \*\*\*
>
> {¶ 9} The state's evidence showed that the victim lived in an upstairs room of a
> house that was used as an after-hours club. He and Thigpen knew each other, not
> only from frequenting the club, but because they were automobile mechanics who
> worked out of the same garage. The evidence showed that at some point in time
> prior to the murder, the victim's tools were stolen from the garage and he blamed
> Thigpen for the theft. Thigpen told the victim that he would give the tools back.
>
> {¶ 10} Thigpen was among those present at the after-hours club on the evening of
> the murder. At about 3:30 a.m., the caretaker of the house (the owner lived out-of-
> state) closed up the house. Thigpen backed his car out of the driveway and onto
> the street so that the caretaker could pull his own car onto the street. As the
> caretaker drove away, he saw Thigpen walking toward the driveway of the house.
> The caretaker returned to the house at around 4:00 p.m. the following afternoon
> and discovered that the front door of the house had been forcibly opened.
> Furniture on the first floor of the house and in the victim's second-floor room had
> been overturned and there was blood on the outside door.
>
> {¶ 11} It was shortly after the caretaker had discovered the break-in that police
> officers on patrol happened to see a sport utility vehicle ("SUV"), later identified
> as belonging to the victim, being driven at a high speed. The officers lost sight of
> the SUV and turned into an area of vacant lots that they knew were used as a
> dumping ground for junk and trash. Fearing that debris on the road surface might

cause a flat tire, the officers parked their cruiser and proceeded on foot to see if they could locate the SUV. They quickly discovered the SUV and saw Thigpen "pulling or dragging something" from the SUV. Thigpen noticed the officers and attempted to hide behind a pile of debris, but his head remained visible to the officers. Although the officers ordered Thigpen to show his hands, he remained behind the debris pile. At the same time, one of the officers approached the SUV and discovered the victim's body. Thigpen fled but, with one officer pursuing on foot and another police cruiser responding to join the search, he was apprehended. Without prompting from the police, Thigpen said, "I didn't do it." After being handcuffed, Thigpen started running away, but was stopped after a few steps.

{¶ 12} The coroner determined that the victim's death was caused by "[b]lunt impacts to head, torso, and extremities with brain, skeletal and soft tissue injuries, and neck compression." Autopsy photographs showed that the victim had been struck with enough force to cause his forehead to cave. The victim's body was covered in blood. The police discovered blood on the stairs of the after-hours house, on the driveway near the door that had been forced open, and on the wall of the garage and on other items located nearby. Cigarette butts found on the driveway near the blood stains tested positive for Thigpen's DNA. A work glove recovered from the driveway bore a stain that was later determined to be the victim's blood. The state's expert concluded that DNA found inside the work glove was a mixture of two individuals, and that neither the victim nor Thigpen could be excluded as possible contributors of that DNA. A knit hat found inside of the SUV also contained DNA matching the profile for both the victim and Thigpen.

{¶ 13} In their investigation, the police located a different vehicle that Thigpen had been seen driving the morning of the murder. The person who owned the car testified that she had given the car to Thigpen for repair work at least two weeks prior to the date of the murder, but that her repeated requests for him to return the car went unanswered. She said that she kept the interior of the car clean, but identified photographs of the car taken immediately after the murder that showed that Thigpen had "trashed" it. The police discovered the victim's blood inside the vehicle. The vehicle also contained some personal possessions belonging to either the victim or the person who owned the house where the after-hours club was located. Items of a mechanical nature were also found in the car, and a mechanic at the automobile repair shop where Thigpen worked identified some of those items as having been stolen from the shop.

{¶ 14} Another witness for the state testified that he worked at an automobile shop. He said that on the day when the police discovered Thigpen and the victim's body, he saw Thigpen pull up in the victim's SUV and inquire about a coworker. The coworker was not present and Thigpen left the premises without exiting the SUV. Thigpen returned a while later, exited the SUV, and entered the shop. He and another person then began removing some items from the back of the SUV.

3

Thigpen then drove away, but returned just moments later and asked the witness for a shovel. The witness brought out a shovel with a wide blade, but Thigpen said that he could not use that kind of shovel.

*State v. Thigpen*, 2016-Ohio-1374, ¶¶ 12-14, 62 N.E.3d 1019, 1025 (Ohio Ct. App. 2016)

## II.  Procedural History

### A.  Conviction

Thigpen's conviction stem from two successive indictments. On November 14, 2011, a Cuyahoga County Grand Jury charged Thigpen on one count of tampering with evidence in violation of Ohio Revised Code ("O.R.C.") § 2921.12(A)(1) and one count of gross abuse of a corpse in violation of O.R.C. § 2927.01(B). (R. 10-1, Exh. 1, CR-11-556316). Thigpen, through counsel, pled not guilty to the indictment. (R. 10-1, Exh. 2). On June 27, 2012, this case was dismissed, because Thigpen had been re-indicted. (R. 10-1, Exh. 3). Prior to dismissal, Defense counsel agreed with the State that Thigpen's "speedy trial time expires on July 20, 2012." (R. 10-1, Exh. 7).

On June 15, 2012, a Cuyahoga County Grand Jury charged Thigpen on two counts of aggravated murder in violation of O.R.C. § 2903.01(A) & (B), one count of murder in violation of O.R.C. § 2903.02(B), two counts of burglary in violation of O.R.C. § 2911.12(A)(2), one count of grand theft in violation of O.R.C. § 2913.02(A)(1), one count of tampering with evidence in violation of O.R.C. § 2921.12(A)(1), one count of gross abuse of a corpse in violation of O.R.C. § 2927.01(B), one count of failure to comply in violation of O.R.C. § 2921.331(A), and one count of receiving stolen property in violation of O.R.C. § 2913.51(A). (R. 10-1, Exh. 4, CR-12-563007). Thigpen, through counsel, entered a plea of not guilty on all counts. (R. 10-1, Exh. 6).

On June 27, 2012, Thigpen signed a speedy trial waiver effective until January 10, 2013.

(R. 10-1, Exh. 8). According to a Journal Entry on December 11, 2012, Thigpen waived his speedy trial rights until April 30, 2013, *id.*, and on March 6, 2013, he waived such rights until August 31, 2013. *Id.* On April 2, 2013, Thigpen filed a *pro se* Notice of Rescission purporting to rescind his earlier speedy trial waiver entered on March 6, 2013. (R. 10-1, Exh. 9). On the same date, Thigpen filed a notice of his termination of appointed counsel, waiver of his right to counsel, as well as his intent to rescind his "Not Guilty" pleas and instead to enter a "Denial" of all charges alleged against him. (R. 10-1, Exhs. 10-12).

On April 11, 2013, the trial court granted Thigpen's motion to waive his right to counsel and to proceed to trial *pro se*, appointed his prior attorneys as stand-by counsel, and instructed counsel to forward their entire file (including all discovery) to Thigpen. (R. 10-1, Exh. 13). The trial date remained set for April 29, 2013. *Id*.

On April 15, 2013, the trial court observed that Thigpen, acting *pro se*, had previously refused discovery from his prior defense counsel, and also refused discovery from the prosecutor in open court. (R. 10-1, Exh. 14). The trial court concluded that Thigpen's behavior was intended to obstruct the judicial process and to interfere with the scheduled trial date. *Id*. The court found Thigpen did not have any dissatisfaction with prior counsel, and reappointed them to represent Thigpen. *Id*.

On April 16, 2013, defense counsel moved the court for a competency examination due to Thigpen's continued failure to cooperate with counsel. (R. 10-1, Exh. 15). On April 22, 2013, the trial court granted the motion. (R. 10-1, Exh. 16).

On April 26, 2013, after Thigpen was found competent to stand trial but continued in his refusal to cooperate with counsel, defense counsel moved to withdraw as counsel because Thigpen would not cooperate in his own defense. (R. 10-1, Exh 17).

On April 29, 2013, Thigpen filed an objection to the trial court's earlier denial of his right to represent himself. (R. 10-1, Exh. 18). On the same date, Thigpen, *pro se*, filed a notice of appeal, in case number CA-13-99841, from the trial court's judgment that revoked his self-representation and re-appointed his previous counsel. (R. 10-1, Exh. 19).

On August 12, 2013, Thigpen, through different counsel at the public defender's office, filed his appellate brief raising one assignment of error:

> The trial court committed error and denied appellant his rights under the constitutions of the United States and Ohio when it wrongfully revoked his properly granted right to self-representation.

> *Issue For Review*: When a competent defendant makes a knowing, voluntary, and intelligent waiver of counsel and determines to represent himself at trial, does a trial court violate his rights under the Sixth and Fourteenth Amendments to the U.S. Constitution and Ohio Constitution, Article I, Section 10 when it refuses to let him represent himself because he refuses to accept discovery?

(R. 10-1, Exh. 20).[1]

On January 23, 2014, the state appellate court reversed and remanded the trial court's judgment revoking Thigpen's right to represent himself, but acknowledged that the trial court maintains authority to revoke Thigpen's self-representation before and throughout the trial if his conduct obstructs the integrity and efficacy of the proceedings. (R. 10-1, Exh. 22; *State v.*

---

[1] On January 9, 2014, before the state appellate court rendered a decision, Thigpen, *pro se*, filed a petition for writ of prohibition against the trial judge with the state appellate court, alleging that the trial court no longer had jurisdiction because of a speedy trial violation, followed by a motion for summary judgment. (R. 10-1, Exhs. 52 & 54). On February 14, 2014, the state appellate court denied both the writ of prohibition and the motion for summary judgment. (R. 10-1, Exhs. 55 & 57; *State ex rel. Thigpen v. Sutula*, No. 100862, 2014 Ohio App. LEXIS 589, 2014-Ohio-611 (February 14, 2014). The state appellate court noted, among other issues, that a violation of a speedy trial right is not cognizable through a writ of prohibition; and a speedy trial right can only be addressed through an appeal. (R. 10-1, Exh. 55, at ¶4). Thigpen filed an application for reconsideration that the court denied. (R. 10-1, Exhs. 58 & 59). There is no indication Petitioner ever appealed this decision to the Ohio Supreme Court.

*Thigpen*, No. 99841, 2014 Ohio App. LEXIS 190, 2014-Ohio-207 (Jan. 23, 2014)).

On February 3, 2014, the State filed a motion for reconsideration which the state appellate court denied on February 13, 2014. (R. 10-1, Exhs 23 & 25).

On March 31, 2014, the State appealed the state appellate court's decision to the Ohio Supreme Court. (R. 10-1, Exhs 26 & 27). On April 29, 2014, Thigpen filed his opposition. (R. 10-1, Exh. 28). On June 25, 2014, the Ohio Supreme Court declined jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 10-1, Exh. 29).

Despite his state appellate court victory on the issue of the right to represent himself, Thigpen, on July 16, 2014, expressed his desire not only to be represented by counsel, but that his previously court appointed defense counsel whom he had vociferously objected to in the past remain as counsel. (R. 10-1, Exh. 30).

On August 15, 2014, Thigpen, through counsel, filed a motion to dismiss based on a violation of Ohio's speedy trial statute, O.R.C. § 2945.71, et seq. as well as based on his Sixth Amendment right to a speedy trial under the United States Constitution. (R. 10-1, Exh. 31). On September 15, 2014, the trial court denied the motion. (R. 10-1, Exh. 33).

On November 10, 2014, after a trial, the jury found Thigpen guilty as charged except for the first count of aggravated murder. (R. 10-1, Exh. 34). On December 9, 2014, Thigpen was sentenced to life without parole. (R. 10-1, Exh. 35).

**B.    Post-Trial Direct Appeal**

On January 8, 2015, Thigpen, through counsel, filed a Notice of Appeal with the state appellate court. (R. 10-1, Exh. 36). Thigpen raised the following assignments of error:

1.   The appellant's conviction for aggravated murder is not supported by sufficient evidence where the State failed to prove he acted with prior calculation and design.

2.  The appellant's convictions of counts 1-8 and 10 are based on insufficient evidence where the government failed to present evidence that the appellant was the person responsible for the death and ultimate attempted cover-up of the victim's death.

3.  The trial court erred in allowing other acts evidence to be presented to jury.

4.  The appellant's convictions of counts 1-8 and 10 are against the manifest weight of the evidence where the government failed to present evidence that the appellant was the person responsible for the death and ultimate attempted cover-up of the victim's death.

5.  The trial court deprived the appellant of his right to confrontation and a fair trial when it misapplied Evid.R. 106.

6.  The State failed to provide sufficient evidence as to count 9 when it failed to show that the officers' order for the appellant to stop was pertaining to the control and regulation of traffic.

(R. 10-1, Exh. 37). On December 23, 2015, Thigpen moved to supplement his brief with the

following additional assignment of error, which the state appellate court permitted over the

State's opposition:

The trial court erred and/or abused its discretion when it denied defendant's motion to dismiss based upon a violation of his right to speedy trial.

(R. 10-1, Exhs. 40-42).

On March 31, 2016, the state appellate court affirmed the judgment of the trial court. (R.

10-1, Exh. 44; *State v. Thigpen*, No. 102467, 2016 Ohio App. LEXIS 1252, 2016-Ohio-1374

(March 31, 2016)).

On April 7, 2016, Thigpen, through counsel, filed a motion for reconsideration with

respect to his supplemental assignment of error, as speedy trial argument was not addressed in

the judgment of March 31, 2016. (R. 10-1, Exh. 45). On June 2, 2016, the state appellate court

vacated its previous decision and issued a new decision that also affirmed the trial court's

judgment. (R. 10-1, Exh. 47).

On August 22, 2016, Thigpen, *pro se*, filed a notice of appeal, as well as a motion for delayed appeal. (R. 10-1, Exhs. 49 & 50). Neither filing set forth any propositions of law. *Id*. On October 26, 2016, the Ohio Supreme Court denied the motion for delayed appeal. (R. 10-1, Exh. 51).

## C.    Federal Habeas Petition

On October 18, 2017, Petitioner, *pro se*, filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

> **GROUND ONE**: Fast and Speedy Trial, Due Process, Statutory and Constitutional of the Sixth and Fourteenth Amendments to the United States Constitutions and Article I, Sub-Section 10 of the Ohio Constitution.
>
> *Issue Presented*: The trial court erred and/or abused its discretion when it denied defendant's motion to dismiss based upon a violation of his right to speedy trial.
>
> **GROUND TWO**: Confrontation Clause and Fair Trial
>
> *Issue Presented*: The trial court deprived the appellant of his right to confrontation and a fair trial when it misapplied Evidence R.106.
>
> **GROUND THREE**: Other Acts Evidence and Fair Trial
>
> *Issue Presented*: The trial court erred in allowing other acts evidence to be presented to the jury.

(R. 1).

## III. Exhaustion and Procedural Default

### A. Exhaustion Standard

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity

to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no

remedy exists, and the substance of a claim has not been presented to the state courts, no

exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice

exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160

(6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot

circumvent the exhaustion requirement by failing to comply with state procedural rules.")

(citations omitted).

**B. Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the

petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure

to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v.*

*Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally

default a claim by failing to comply with state procedural rules in presenting his claim to the

appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to

petitioner's failure to comply with the procedural rule, the state court declines to reach the merits

of the issue, and the state procedural rule is an independent and adequate grounds for precluding

relief, the claim is procedurally defaulted.[1] *Id.*

---

[1] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *accord Buell v.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief that are significant to determining whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional

---

*Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001); *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6ᵗʰ Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6ᵗʰ Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6ᵗʰ Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6ᵗʰ Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6ᵗʰ Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6ᵗʰ Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough, however. A petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807

(N.D. Ohio 2007) (Katz, J.)

## C. Analysis

Respondent asserts that all three of Petitioner's grounds for relief are procedurally defaulted, because they were not fairly presented to all levels of the Ohio courts. (R. 10, PageID# 67). Specifically, Respondent contends that Petitioner failed to complete a full-round of direct review and that the Ohio Supreme Court was prevented from addressing the issues raised in the petition on their merits when Petitioner failed to perfect a timely appeal. *Id*. at PageID# 72-73

It is indisputable that Petitioner failed to file a timely appeal from the state appellate court's decision. On post-trial direct appeal, the state appellate court issued its decision on June 2, 2016, vacating its earlier decision from March 31, 2016. (R. 10-1, Exhs. 44 & 47). Petitioner had forty-five (45) days to perfect a timely appeal to the Supreme Court of Ohio—until July 18, 2016.[2] Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i). Petitioner, however, was untimely and filed a motion for delayed appeal and notice of appeal on August 22, 2016.[3] (R. 10-1, Exhs. 48 & 49). As recounted above, the Ohio Supreme Court denied Petitioner's motion to file a delayed appeal.

> In Ohio, appellants have forty-five days from the entry of an adverse court of appeals judgment to file a notice of appeal to the Ohio Supreme Court. [Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i)]. If an appellant misses the forty-five day window, he may seek leave to file a delayed appeal. The Sixth Circuit has held that if the Ohio Supreme Court denies a motion for delayed appeal, it is an "independent and adequate" state procedural ground that bars later federal review of the merits.

*Lollis v. Warden, Ohio State Penitentiary*, No. 15-CV-703, 2016 WL 3619360, at *2 (N.D. Ohio

---

[2] The 45-day deadline ended on July 17, 2016, but that date fell on a Sunday. Pursuant to Ohio S.Ct.Prac.R 3.03, "[i]f the last day of the period is a Saturday, Sunday, or legal holiday, the period runs until 5:00:00 p.m. local observed time in Columbus, Ohio on the next day that is not a Saturday, Sunday, or legal holiday. Thus, petitioner had until July 18, 2016 to file a timely appeal.

[3] According to the certificate of service completed by Thigpen, his notice of appeal and motion for delayed appeal were not mailed until August 14, 2016. (R. 10-1, Exhs. 48 & 49).

July 6, 2016) (Gwin, J.), *certificate of appealability denied sub nom. Lollis v. Erdos*, No. 16-3923, 2017 WL 3613599, at *1-2 (6th Cir. May 3, 2017)) (*citing Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) ("This case turns upon whether the Ohio Supreme Court entry denying Bonilla's motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal court review of Bonilla's habeas corpus petition. Upon examination of the Ohio Supreme Court Rules, we conclude that it does."); *see also Rhodes v. Warden, Ross Corr. Inst.*, No. 2:16-cv-0074, 2017 WL 2694680, at *1 (S.D. Ohio, Jun. 20, 2017) (finding that the petition was procedurally defaulted because "[t]he Ohio Supreme Court denied Petitioner's subsequent motion for a delayed appeal, and Petitioner can now no longer properly present claims one through three to the state courts by operation of Ohio's doctrine of *res judicata*"); *accord Madison v. Bradley*, No. 2:17-CV-1023, 2017 WL 5904605 (S.D. Ohio Nov. 20, 2017) (recommending dismissal because Petitioner procedurally defaulted his claims where he "failed to file a timely appeal of the appellate court's decision denying his claims to the Ohio Supreme Court, and the Ohio Supreme Court denied his motion for a delayed appeal").

Petitioner posits that there is a "bright-line test that excuses a procedural default whenever the state courts have reached the merits of the claim." (R. 20, PageID# 2031). As this court construes Petitioner's argument, he claims that it is irrelevant that the Ohio Supreme Court never had an opportunity to address the merits of his claims due to his failure to appeal in a timely manner so long as the state appellate court addressed the merits of his claim. This position contradicts the above cited authority and is rejected.

Therefore, Petitioner has procedurally defaulted his habeas claims under the *Maupin* test established by the Sixth Circuit, as (1) Petitioner failed to comply with an applicable state procedural rule—the 45 day filing deadline; (2) the Supreme Court of Ohio actually enforced the

state procedural sanction by denying the delayed appeal; and, (3) the state procedural bar constitutes an "independent and adequate" state ground foreclosing federal habeas review based on Sixth Circuit precedent. 785 F.2d at 135. The only issue remaining is whether Petitioner can demonstrate both "cause" and "prejudice" excusing the default.

In support of his motion for delayed appeal, Petitioner argued that his counsel did not receive notification of the June 2, 2016 state appellate court decision until June 14, 2016, and he attached a letter from his counsel asserting as such.[4] (R. 10-1, Exh. 50, PageID# 499). It bears noting that the letter clearly informed Petitioner that he had 45 days from the June 2, 2016 order to appeal to the Supreme Court of Ohio. *Id.* Thus, Petitioner could not credibly argue that he had been unaware of the deadline. The motion for delayed appeal attached a letter from the Office of the Clerk of the Supreme Court of Ohio dated July 12, 2016, from which it appears Petitioner submitted some documents to the Supreme Court of Ohio, but they were returned because his submission did not comply with several rules, notably Ohio S. Ct. Prac. R. 3.11(B) and 7.02(B). (R. 10-1, Exh. 50, PageID# 500). The letter from the Clerk's Office warned him that if he is "appealing a court of appeals' decision dated June 2, 2016, [his] documents are due in the clerk's office no later than July 18, 2016." *Id.* Petitioner, however, did not file a notice appeal or motion for delayed appeal for more than a month. (R. 10-1, Exhs. 49 & 50). Moreover, neither filing set forth any propositions of law. *Id.*

As explained above, in order to establish cause, a petitioner must show that "some objective factor external to the defense" impeded the defendant's efforts to comply with the State's procedural rule." *Carrier*, 477 U.S. at 488. A petitioner's ignorance of the law or the

---

[4] Petitioner further asserted that he did not receive the notification letter from counsel until June 29, 2016. (R. 10-1, Exh. 50, PageID# 495).

appropriate state court procedures do not constitute cause. *See Bonilla*, 370 F.3d at 498 (*citing*

*Hannah v. Conley,* 49 F.3d 1193, 1197 (6th Cir. 1995)). Thus, Petitioner's *pro se* status alone is

insufficient to constitute cause under the facts of this case.

Finally, Respondent argues that "because Thigpen states that he did not learn of the state

court's decision until June 29, 2016, but did not file his delayed appeal until August 22, 2016, a

delay of 56 days, Thigpen may not plausibly claim ineffective assistance of appellate counsel as

cause for his procedural default .…" (R. 10, PageID# 67). Indeed, fifty-four (54) days elapsed

between the date Thigpen himself professed to learn of the state appellate court's decision and

the date his notice of appeal was filed. Under clear precedent, the alleged delayed notification

Thigpen received from counsel, given the facts of this case, cannot serve as cause to excuse his

default:

> In assessing whether a defendant such as [petitioner] "would have timely
> appealed," by considering whether the defendant "promptly expressed a desire to
> appeal," we apply a *rebuttable presumption that if the period of time between
> when the defendant learned of the decision and when he or she attempted to
> appeal the decision is greater than the period allotted by state law for the timely
> filing of an appeal-here, forty-five days-the defendant fails to demonstrate that he
> or she "would have timely appealed" the decision but for the counsel's deficient
> failure to notify the defendant of the decision*. In the absence of other
> circumstances hindering the defendant's ability to attempt to appeal the decision
> within this time frame, allowing a greater amount of time would generally bestow
> a windfall upon the defendant whose counsel promptly failed to notify the
> defendant of a decision. Even accepting [petitioner's] assertion and the district
> court's conclusion that he did not receive notice of the decision of the Ohio Court
> of Appeals until August 11, 2000, he did not take action to appeal the decision
> until February 2001, approximately five months after learning of the decision,
> well beyond the forty-five-day limit allowed under Ohio Supreme Court Rule II §
> 2(A)(1)(a). For this reason, [petitioner] has failed to establish prejudice as a result
> of his counsel's failure to notify him of the Ohio Court of Appeals decision
> denying his claims, and thus he cannot rely on his counsel's ineffective assistance
> to overcome the procedural default of his double jeopardy and insufficient
> evidence claims.

*Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 435-36 (6th Cir. 2006) (emphasis

added); *accord Baker v. Bradshaw*, 495 Fed. App'x 560, 566 (6th Cir. 2012).

Here too, the court applies the rebuttable presumption that Thigpen would *not* have timely appealed even if he had learned of the state appellate court's decision in a more expedient manner. Thigpen has failed to rebut this presumption, and has not identified any compelling or unusual circumstances that prevented him from filing an appeal within 45 days.[5] Therefore, he has failed to demonstrate both cause and prejudice for his default.

Lastly, a procedural default may be excused based on a credible claim of actual factual innocence based on new, reliable evidence. However, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013) (*citing Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)); *House v. Bell*, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met). While Petitioner has undoubtedly argued that the largely circumstantial evidence against him was insufficient to support his conviction, he has not identified any new, reliable evidence that would dissuade any reasonable juror from finding him guilty beyond a reasonable doubt. Thus, the court concludes the petition is procedurally defaulted with no basis for setting aside the default.[6]

---

[5] Even if the court were to employ the date Petitioner ostensibly mailed his notice of appeal—August 14, 2016—as the operative date, the time span between that date and June 29, 2016 is 46 days, and Thigpen could still not plausibly argue that he would have submitted his appeal within the 45 days allotted under the Ohio Supreme Court's rules.

[6] Given the lack of ambiguity over Petitioner's procedural default, the court has not addressed the underlying merits of the petition in the interests of judicial economy.

## IV. Conclusion

For the foregoing reasons, it is recommended that Thigpen's Petition be DISMISSED as procedurally defaulted.

s/ David A. Ruiz
United States Magistrate Judge

Date: November 6, 2019

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**